IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STUART TINNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 03-1126-SLR |
| | ) |
| GENESEO COMMUNICATIONS, INC., | ) |
| CAMBRIDGE TELECOM, INC., THE | ) |
| BLACKSTONE GROUP, CASS | ) |
| COMMUNICATIONS MANAGEMENT, | ) |
| INC., TECHNOLOGY GROUP, LLC, | ) |
| THE TCW FUNDS, MONTROSE | ) |
| MUTUAL PCS, INC., GRIDLEY | ) |
| ENTERPRISES, INC., TIMOTHY M. | ) |
| YAGER, and AIRGATE PCS, INC., | ) |
| | ) |
| Defendants. | ) |

Jeffrey S. Goddess, Esquire, Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware.  Counsel for Plaintiff.

Arthur G. Connolly, III, Esquire, Kevin F. Brady, Esquire, Connolly, Bove, Lodge & Hutz; Rudolph J. Scaggs, Jr., Esquire, Natalie Jenaye Haskins, Esquire, Morris, Nichols, Arsht & Tunnell; Diane Zilka, Esquire, Grant & Eisenhofer, P.A.; Kurt M. Heyman, Esquire, Patricia L. Enerio, Esquire, Proctor Heymann LLP, Wilmington, Delaware.  Counsel for Defendants.  Of Counsel: Daniel H. Shulman, Esquire, J. Gregory Deis, Esquire, John M. Touhy, Esquire, Mayer Brown Rowe & Maw, Chicago, Illinois.

**MEMORANDUM OPINION**

Dated: October 10, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On December 11, 2003, plaintiff Stuart Tinney filed this
action, on behalf of nominal defendant AirGate PCS ("AirGate"),
against defendants Geneseo Communications, Inc. ("Geneseo"),
Cambridge Telecom, Inc. ("Cambridge"), The Blackstone Group
("Blackstone"), Trust Company of the West ("TCW"), Cass
Communications Management, Inc. ("Cass"), Technology Group, LLC
("Technology Group"), Montrose Mutual PCS, Inc. ("Montrose"),
Gridley Enterprises, Inc. ("Gridley"), Timothy M. Yager, Peter G.
Peterson, and Stephen A. Schwarzman, alleging violations of §
16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15
U.S.C. § 78p(b).  (D.I. 1)  On April 27, 2004, plaintiff filed an
amended complaint.  (D.I. 13)  Defendants filed a motion to
dismiss (D.I. 17), which this court granted in part (as to
defendants Peter G. Peterson and Stephen A. Schwarzman), and
denied in part (with respect to the remaining movants).[1]  (D.I.
34)  In July 2005, plaintiff agreed substitute the TCW Funds as
defendants in TCW's stead.[2]  (D.I. 81)  At issue is defendants'

---

[1]The court denied defendants' motion to dismiss because the
factual record was "undeveloped and less than illuminating" at
that point and it was unclear to the court whether defendants
were "directors" for purposes of the Exchange Act.  (D.I. 34 at
7-8)

[2]The "TCW Funds" are TCW/Crescent Mezzanine Partners II, LP;
TCW Crescent Mezzanine Trust II; TCW Leveraged Income Trust, LP;
TCW Leveraged Income Trust II, LP; TCW Leverage Income Trust IV,
LP; TCW Shared Opportunity Fund II, LP; Shared Opportunity Fund
IIB, LLC; and TCW Shared Opportunity Fund III, LP.  (D.I. 81)

motion for judgment on the pleadings.[3]  (D.I. 87)  The court has jurisdiction over this motion pursuant to 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331, 1337.

## II.  BACKGROUND

Plaintiff was a shareholder in AirGate, a Delaware corporation.  (D.I. 13 at ¶¶ 6-7)  Plaintiff alleges that defendants were all principal shareholders of iPCS, Inc. ("iPCS"), a private company that planned to merge with AirGate. (D.I. 13, passim)  AirGate and iPCS signed their formal merger agreement (the "merger agreement") on August 28, 2001.  (Id. at ¶ 19)  The merger agreement provided that iPCS would become a wholly owned subsidiary of AirGate.  (D.I. 19, ex. 1 at 42)  Also on August 28, 2001, AirGate and defendants entered into agreements requiring defendants to vote all their shares in support of the merger agreement.  (D.I. 19, ex. 1 at 54) Defendants likewise entered into lock-up agreements prohibiting them from selling any AirGate stock acquired through the merger without AirGate's prior consent for at least 120 days after the merger.  (Id.)  The merger agreement gave defendants the right to designate three directors to AirGate's nine member board upon the merger's effective date.  (D.I. 13 at ¶ 31; D.I. 89, ex. A at 56-

---

[3]On November 29, 2005, plaintiff filed a motion seeking leave to file a sur-reply with respect to defendants' motion for judgment on the pleadings.  (D.I. 107)  Plaintiff's motion is denied as moot.

57) AirGate further agreed to appoint at least one director designated by defendants to board committees. (Id.)

On November 27, 2001, the shareholders of AirGate approved the merger agreement. (D.I. 13 at ¶ 36) The merger took effect on November 30, 2001, at which time defendants' iPCS preferred stock was converted into iPCS common stock. (D.I. 89, ex. A at 3) When iPCS shareholders surrendered their iPCS stock certificates, they received about .1594 shares of AirGate common stock per share of iPCS.[4] (D.I. 13 at ¶ 38; D.I. 28 at 7; D.I. 19, ex. 1 at 42-43) The conversion rate was adjustable if there was

> any inaccuracy in the number of outstanding shares of iPCS common stock, preferred stock, options, warrants or other stock equivalents presented by iPCS to AirGate;

_____

[4]After the merger, defendants owned the following percentages of AirGate's common stock:

| (1) | Geneseo: | 9.6% |
|-----|----------|------|
| (2) | Cambridge: | 8.2% |
| (3) | Blackstone: | 16.2% |
| (4) | TCW: | 4% |
| (5) | Cass: | 2.7% |
| (6) | Technology Group: | 2.7% |
| (7) | Montrose: | 2.7% |
| (8) | Gridley: | 1.4% |
| (9) | Yager: | 1% |

(D.I. 13 at ¶ 39) Plaintiff alleges that defendants were a "group" pursuant to § 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and, therefore, that defendants collectively owned more than 10% of AirGate's shares. (Id. at ¶¶ 32-34) This would make them insiders subject to the restrictions of § 16(b). 15 U.S.C. § 78p(b).

> the issuance after August 28, 2001 of options,
> warrants or other rights to purchase iPCS common stock;
> or
>
> any stock split, reverse stock split, stock
> dividend, recapitalization, reclassification or other
> like change with respect to iPCS common stock occurring
> before the merger.

(D.I. 19, ex. 1 at 42)

On December 11, 2001, less than six months after the merger, defendants sold approximately 4 million shares of their AirGate stock.  (D.I. 13 at ¶ 41)  Plaintiff requests a declaratory judgment that this sale constituted "short-swing trading" barred by § 16(b) of the Exchange Act and seeks damages in the amount of any short-swing profits realized by defendants, as well as reasonable costs and expenses.  (D.I. 13 at 17)

## III.  STANDARD OF REVIEW

When deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party.  Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993).  The motion can be granted only if no relief could be afforded under any set of facts that could be provided.  Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991); see also Southmark Prime Plus, L.P. v. Falzone, 776 F. Supp. 888, 891 (D. Del. 1991); Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical

4

Ctr., 536 F. Supp. 1065, 1072 (E.D. Pa. 1982) ("If a complaint

contains even the most basic of allegations that, when read with

great liberality, could justify plaintiff's claim for relief,

motions for judgment on the pleadings should be denied.").

However, the court need not adopt conclusory allegations or

statements of law.   In re General Motors Class E Stock Buyout

Sec. Litig., 694 F. Supp. 1119, 1125 (D. Del. 1988).  Judgment on

the pleadings will only be granted if it is clearly established

that no material issue of fact remains to be resolved and that

the movant is entitled to judgment as a matter of law.  Jablonski

v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988).

## IV.  DISCUSSION

Section 16(b)of the Exchange Act ("§ 16(b)") bans

transactions known as "short-swing trading":

> For the purpose of preventing the unfair use of
> information which may have been obtained by such
> beneficial owner, director, or officer by reason of his
> relationship to the issuer, any profit realized by him
> from any purchase and sale, or any sale and purchase,
> of any equity security of such issuer . . . involving
> any such equity security within any period of less than
> six months, unless such security or security-based swap
> agreement was acquired in good faith in connection with
> a debt previously contracted, shall inure to and be
> recoverable by the issuer, irrespective of any
> intention on the part of such beneficial owner,
> director, or officer in entering into such transaction
> of holding the security or security-based swap
> agreement purchased or of not repurchasing the security
> or security-based swap agreement sold for a period
> exceeding six months.

15 U.S.C. § 78p(b). The Exchange Act also grants the Securities and Exchange Commission ("SEC") the "power to make such rules and regulations as may be necessary or appropriate to implement the provisions of [the Exchange Act] for which [it is] responsible or for the execution of the functions vested in [it]" by Congress. 15 U.S.C. § 78w.

The merger agreement in the case at bar stated that, prior to the merger's effective date, AirGate would "take all such steps as may be required to cause any acquisitions of Public Common Stock . . . resulting from the transactions contemplated by this Agreement . . . to be exempt under [SEC] Rule 16b-3[,] . . . such steps to be taken in accordance with the interpretive guidance of the SEC." (D.I. 89, ex. A at 56) Likewise, "[t]o the extent that [Blackstone] or any of its affiliates may be deemed a 'director by deputization,'" they were ostensibly granted exemption under Rule 16b-3(d)(1) by AirGate's Board of Directors. (Id., ex. B at 9)

SEC Rule 16b-3 ("Rule 16b-3") exempts certain transactions between "an issuer and its officers or directors" from the requirements of § 16(b). 17 C.F.R. § 240.16b-3(a). In order to qualify for an exemption at the time of the AirGate/iPCS merger,[5]

---

[5]Rule 16b-3 was subsequently amended and now applies to "acquisition[s] from the issuer (including without limitation a grant or award), **whether or not intended for a compensatory or other particular purpose**." 17 C.F.R. § 240.16b-3 (2005) (emphasis added).

6

"[a]ny transaction involving a grant, award or other acquisition from the issuer (other than a Discretionary Transaction)" had to be:

(1) . . . approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;

(2) . . . approved or ratified . . . by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with [] applicable laws . . . ; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; . . . or

(3) . . . held by the officer or director for a period of six months following the date of such acquisition .
. . .

Id. § 240.16b-3(d) (2001). AirGate's Board of Directors and its shareholders approved the merger agreement (which contained the Rule 16b-3 exemption clause). (D.I. 19, ex. 1 at 33; D.I. 13 at ¶ 36; see also D.I. 89, ex. B)

A successful claim to recover profits from a short-swing transaction requires proof of (1) the purchase (2) and sale of securities (3) by an insider (one of the issuer's officers or directors or a shareholder who possesses more than 10% of any one class of the issuer's securities) (4) within a six-month period of time. See Levy v. Sterling Holding Co., 314 F.3d 106, 111 (3d Cir. 2002) (quoting Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998)). The first, second, and fourth elements have been fulfilled in the case at bar; therefore, the

7

success of plaintiff's claim depends on whether, at the time of the stock sale, defendants were insiders for the purposes of § 16(b) and, if so, whether the transaction is exempt from § 16(b) scrutiny under Rule 16b-3.

Plaintiff contends that, at all relevant times, defendants were "deputized directors of AirGate" and "subject to [§] 16(b) of the Exchange Act." (D.I. 13 at ¶ 55)  In the alternative, he argues that "[b]y virtue of the Merger Agreement and related agreements, all defendants . . . became beneficial owners of Airgate stock for [§] 16(b) purposes." (Id. at ¶ 53)  Therefore, he maintains, "[s]ince the holdings in subject securities of all group members may be aggregated, all defendants were beneficial owners of 10% of AirGate stock" (id. at ¶ 54), which would bring defendants' sale of that stock within the scope of § 16(b) (id. at ¶¶ 51-54).  Despite the exemption provision in the merger agreement, plaintiff avers that "[t]here are no exemptions applicable to the short swing transactions which are the subject of this lawsuit."[6]  (Id. at ¶ 62)

---

[6]Rule 16b-3 exemptions apply to "[g]rants, awards, and other acquisitions from the issuer." 17 C.F.R. § 240.16b-3. Plaintiff bases his claim (that no such exemptions apply to defendants' stock sale) on a 2002 ruling by the Third Circuit, Levy v. Sterling Holding Co., 314 F.3d 106 (3d Cir. 2002) (analyzing the **unamended** version of Rule 16b-3), which held that "Rule 16b-3 primarily is concerned with employee benefit plans," id. at 122, and that, in order to be an exempted "other acquisition," a transaction "should have some connection to a compensation-related function," id. at 124. Because defendants' acquisitions were not compensation-related, plaintiff argues, Levy precludes

8

According to defendants, they were neither deputized directors of AirGate nor, for purposes of the Exchange Act, a group of beneficial owners holding more than 10% of the company's stock.  (D.I. 18 at 2-3)  Even if the court were to find such, defendants argue, the SEC's recent clarification of Rule 16b-3[7] abrogates the Third Circuit's ruling in Levy and exempts defendants from liability under § 16(b).  (D.I. 105 at 3)

## A.  Defendants' Eligibility to Invoke Rule 16b-3

In a Rule 12(c) motion for judgment on the pleadings, the court must view all facts and inferences in a light most

_____

the application of a Rule 16b-3 exemption to the stock sale in issue at bar.  (D.I. 28 at 22-23)
    Plaintiff also states that, in its memorandum order of March 21, 2005 (D.I. 34),

> this Court held, inter alia, that plaintiff's Amended
> Complaint properly alleged all elements of a [§] 16(b)
> claim against defendants and further held that the
> Third Circuit's decision in Levy, . . . determining the
> exemptive scope of Rule 16b-3(d), controlled this case
> and mandated rejection of defendants' argument that
> Rule 16b-3(d) exempted the transaction at issue herein
> from [§] 16(b).

(D.I. 91 at 2)  Plaintiff's statement is disingenuous:  The court's memorandum order, though it cited Levy (D.I. 34 at 7), was not addressing defendants' exemption claims; instead, using the relatively deferential standard for a motion to dismiss, the court found that the factual record had not yet been sufficiently developed to justify dismissal of the claims against all but two of the defendants.  (Id. at 8)

    [7]After the Levy decision, the SEC "adopt[ed] amendments to two rules that exempt certain transactions from the private right of action to recover short-swing profit provided by Section 16(b) of the [Exchange Act]."  70 Fed. Reg. 46,080 (Aug. 9, 2005) (amending 17 C.F.R. § 240.16b-3).

favorable to the non-moving party (plaintiff, in the case at
bar). Plaintiff has based his entire complaint on the allegation
that defendants are liable under § 16(b) because they were either
directors or beneficial owners of 10% of the issuer's stock.
(D.I. 13 at ¶¶ 8-16) If the court accepts plaintiff's
allegations as true, and defendants are able to show that they
are entitled to an exemption (either under Rule 16b-3[8] or §
16(b)[9]), then the issues at bar become moot. If defendants, as
they claim, do not qualify as beneficial owners or directors,
then they cannot be characterized as "insiders" and liability
under § 16(b) cannot attach.

## B. The 2005 Amendment to Rule 16b-3

In 2002, the United States Court of Appeals for the Third
Circuit held that statements in "the SEC's 1996 release adopting
Rule 16b-3" "suggest that the SEC intended, in Rule 16b-3(d), to
exempt [only] 'grants, awards, and other acquisitions' with some
compensatory nexus." Levy v. Sterling Holding Co., 314 F.3d 106,
122, 124 (3d Cir. 2002). The SEC amended Rule 16b-3 in 2005

---

[8]Rule 16b-3 exemptions are applicable only to "Transactions
Between An Issuer and Its Officers or Directors," not those
between an issuer and beneficial owners of its securities. 17
C.F.R. § 240.16b-3.

[9]"[Section 16(b)] shall not be construed to cover any
transaction where such beneficial owner was not such **both at the
time of the purchase and sale**, or the sale and purchase, of the
security or security-based swap agreement." 15 U.S.C. § 78p(b)
(emphasis added).

10

("the amendment") in order to "eliminate the uncertainty generated by the Levy v. Sterling opinion" and specifically included non-compensatory acquisitions within the scope of Rule 16b-3's exemption.[10] 70 Fed. Reg. 46,080, 46,082 (Aug. 9, 2005); see also 17 C.F.R. § 240.16b-3 (2005) (exempting, under certain circumstances, "transaction[s] . . . involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose"). In addition, "[b]ecause they clarify regulatory conditions that applied to these exemptions since they became effective on August 15, 1996," the SEC stated that the newly-amended versions of Rules 16b-3(d) and (e) "are available to any transaction on or after August 15, 1996 that satisfies the regulatory conditions so clarified." 70 Fed. Reg. 46,080, 46,080 (Aug. 9, 2005).

Under the Levy court's interpretation of the pre-amendment version of Rule 16b-3, defendants' decision to sell their AirGate stock within six months of acquiring it would not be eligible for

---

[10]In its explanation of the amendment, the SEC noted that the Third Circuit's "construction of Rule 16b-3 [in Levy] [was] not in accord with our clearly expressed intent in adopting the rule." 70 Fed. Reg. 46,080, 46,081 (Aug. 9, 2005). In fact, on February 28, 2003, the SEC filed an amicus brief supporting the Levy defendants' petition for a rehearing and endorsed a construction of Rule 16b-3 antithetical to that adopted by the Third Circuit. See Memorandum by SEC as Amicus Curiae Supporting Appellees' Petition for Rehearing, Levy v. Sterling Holding Co., 314 F.3d 106 (3d Cir. 2002) (No. 02-1698).

exemption because the transaction did not have a compensatory element; if, however, the SEC is correct and the amendment's effect is retroactive to the date Rule 16b-3 was originally adopted, defendants' stock sale could potentially be exempt from scrutiny under § 16(b), even if defendants are properly classified as insiders.[11]   In order to qualify for exemption in such a situation, defendants would have to show that they fulfilled the requirements of either Rule 16b-3(d)(1)[12] or Rule

---

[11]According to defendants' counsel, after the court denied defendants' motion to dismiss, "the parties and the Court didn't put in a summary judgment schedule date . . . because . . . there was a proposed SEC amendment clarifying Rule [16b-3], an exemption," which defendants believed would be "dispositive if enacted."  (D.I. 111 at 9)  "[T]he Court," defendants state, "decided that the proper thing to do was for other parties to complete discovery.  When the SEC finally clarified the rule, [defendants] could bring it to the Court's attention."  (Id.) Defendants' counsel aver that they have now done so, "styled . . . as a motion for judgment on the pleadings," since "the SEC has clarified Rule [16b-3]."  (Id. at 10)  While plaintiff's counsel disagreed that a holding on the retroactivity of the SEC's clarification would be dispositive of the entire case, the parties agree that it would be helpful for the court to rule on the exemption and retroactivity issues presented by the motion for judgment on the pleadings before conducting any further motion practice in this case.  (Id. at 10-12)

[12]Transactions are exempt under Rule 16b-3(d)(1) if they are "approved by the board of directors of the issuer."  17 C.F.R. § 240.16b-3(d)(1).

12

16b-3(d)(2).[13]  At the parties' request, the court will address
the retroactive effect of the SEC's clarifying amendment.

## C.   Retroactive Effect of the Amendment

Years before the Levy court's finding that Rule 16b-3
required exempted transactions to have some sort of "compensatory
nexus," the SEC (upon adopting changes to Rule 16b-3 in 1996)
stated that, "unlike the current [pre-1996] rule, a transaction
need not be pursuant to an employee benefit plan or any
compensatory program to be exempt, nor need it specifically have
a compensatory element."   61 Fed. Reg. 30,376, 30,378-30,379
(June 14, 1996).  Despite this, the Levy court agreed with the
appellant's assertion that

> "the mere fact that the transaction does not need . . .
> to have a **specifically** compensatory element does not
> mean that the transaction does not need to have **any**
> compensatory element whatsoever. . . . In fact, what
> **specifically** implies is that there still needs to be
> some compensatory element to the transaction even if it
> is not the primary one."

Levy, 314 F.3d at 122 (emphasis and omissions in original)
(quoting appellant's reply brief at 23-24, Levy, 314 F.3d 106
(No. 02-1698)).  Because of this, the SEC amended Rule 16b-3 to
more clearly state that a compensatory element is **not** required

---

[13]Rule 16b-3(d)(2) exempts transactions that have been
"approved or ratified . . . [by] the affirmative votes of the
holders of a majority of the securities of the issuer present, or
represented, and entitled to vote at a meeting duly held in
accordance with the applicable laws of the state or other
jurisdiction in which the issuer is incorporated."   17 C.F.R. §
240.16b-3(d)(2).

for an exemption; the SEC also explained that this had been the meaning of the rule since its enactment in 1996. 70 Fed. Reg. 46,080, 46,080-46,082 (Aug. 9, 2005). Defendants claim that, since the SEC has stated that the amendment's clarification is retroactive, any transactions related to the AirGate/iPCS merger are exempt under Rule 16b-3. (D.I 88 at 11) Plaintiff, meanwhile, avers that "[t]he SEC's use of the term 'clarifying' will not endow the Amendment with retroactive effect," and that "the [SEC's] views as to whether its rules are legislative or interpretive are not entitled to deference." (D.I. 91 at 9)

The court's inquiry will begin with the question of whether the SEC was authorized to exempt certain kinds of insider short-swing transactions from liability under § 16(b). If so, the court will then address the ability of the SEC to "clarify" its rules and make those clarifications retroactive.

## 1. Judicial Deference to Administrative Actions

In explaining the United States Supreme Court's decision in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), the Third Circuit stated:

Under Chevron, we must first determine if Congress has spoken directly to the question at issue. If Congress' intent is clear, our inquiry must end and we "must give effect to the unambiguously expressed intent of Congress." If we decide Congress has not directly spoken to the issue and that "the statute is silent or ambiguous with respect to the specific issue," we must ask whether the agency's interpretation is based on a "permissible construction of the statute." If we find it is, we give deference to that interpretation. If

14

> Congress "explicitly left a gap for an agency to fill .
> . . a court may not substitute its own construction of
> a statutory provision for a reasonable interpretation
> made by the administrator of an agency."

Robert Wood Johnson Univ. Hosp. v. Thompson, 297 F.3d 273, 281

(3d Cir. 2002) (omission in original) (quoting Chevron, 467 U.S.

at 843-44). Section 16(b) of the Exchange Act states that its

purpose is to "prevent[] the unfair use of information which may

have been obtained by [a] beneficial owner, director, or officer

by reason of his relationship to the issuer," 15 U.S.C. § 78p(b);

in other words, § 16(b) aims to keep people from profiting off of

insider information. Congress also decreed that § 16(b) "shall

not be construed to cover . . . any transaction or transactions

which the [SEC] by rules and regulations may exempt **as not**

**comprehended within the purpose of this subsection**." Id.

(emphasis added). Congress, therefore, gave the SEC substantial

latitude in deciding which kind of insider transactions to exempt

from § 16(b) scrutiny.

In 1996, the SEC adopted the Rule 16b-3 exemptions at issue

in the case at bar in order "to align better the regulatory

requirements under the rule with the statutory goals underlying

section 16." 61 Fed. Reg. 30,376, 30,380 (June 14, 1996). The

SEC intended the 1996 revisions to "streamline the Section 16

regulatory scheme, particularly with respect to transactions

between an issuer and its officers and directors; . . . broaden

exemptions from short-swing profit recovery where consistent with

15

the statutory purposes; and codify several staff interpretive positions." Id. at 30,376.

In the case at bar, Congress "explicitly left a gap for [the SEC] to fill," and the SEC enacted a new version of Rule 16b-3 consistent with what it reasonably believed to be § 16(b)'s statutory purpose; therefore, this court "may not substitute its own construction" for, and must give deference to, the SEC's interpretation of § 16(b). Robert Wood Johnson, 297 F.3d at 281. Because the court finds that the SEC had the power to enact the exemptions listed in Rule 16b-3 (as well as the 2005 amendment stating that transactions need not have a compensatory element in order to be eligible for such exemptions), the question now becomes whether defendants' transaction, which occurred in 2001, is controlled by the Levy court's interpretation of the unamended version of Rule 16b-3 or the SEC's 2005 "retroactive clarification."

## 2. Retroactivity

The SEC has clearly stated that the amendment was meant only as a clarification in light of what it contends was the Third Circuit's erroneous construction in Levy. 70 Fed. Reg. 46,080, 46,081 (Aug. 9, 1995). Plaintiff avers that "[t]he Amendment here has all the hallmarks of a legislative rule and none of the indicia of being an interpretation." (D.I. 91 at 10)

16

In <u>Appalachian States Low-Level Radioactive Waste Commission</u> <u>v. O'Leary</u>, 93 F.3d 103 (3d Cir. 1996), which applied the <u>Chevron</u> analysis to the Secretary of Labor's interpretation of a statute, the Third Circuit found that "[t]he Secretary's ruling was interpretive." <u>Id.</u> at 112.

> "Interpretive rules constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. Interpretive rules are not intended to alter legal rights, but to state the agency's view of what existing law requires. Such rules 'merely clarify or explain existing law or regulations.' 'If the rule in question merely clarifies or explains existing law or regulations, it will be deemed interpretive.' A rule is also interpretive if the statutory scheme would have been fully operative without the regulations and the regulation merely published standards to be used in agency adjudication."

<u>Id.</u> at 112-13 (internal citations omitted). The Third Circuit also recognized that,

> [while] [r]etroactive rulemaking is presumptively impermissible, <u>see</u> <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988); <u>see also</u> <u>Landgraf v. USI Film Products</u>, 511 U.S. 244 (1994), retroactivity concerns are irrelevant to this case. The Secretary's ruling was interpretive. It therefore did not alter existing rights or obligations; **it merely clarified what those existing rights and obligations had always been.** <u>See</u> <u>Manhattan Gen. Equip. Co. v. Commissioner</u>, 297 U.S. 129, 135 (1936) (explaining that agency rule interpreting a statute "is no more retroactive in its operation than a judicial determination construing and applying a statute to a case in hand"). As a result, her interpretation had no prohibited retroactive impact.

<u>Appalachian States</u>, 93 F.3d at 113 (emphasis added). Under the Third Circuit's rulings, the critical factor in determining the

17

retroactive effect of the 2005 amendment to Rule 16b-3 is whether the amendment is properly characterized as a new rule or as a "clarification" of what Rule 16b-3 has always meant.[14]

The United States Supreme Court, in Christensen v. Harris County, 529 U.S. 576 (2000), "confront[ed] an [administrative agency's informal] interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking." Id. at 587. According to the Court, "[i]nterpretations such as those in opinion letters - like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law - do not warrant Chevron-style deference." Id. The Court stated that the agency's request for deference was an attempt "to overcome the regulation's obvious meaning," and that "deference is warranted only when the language of the regulation is ambiguous. . . . To defer to the agency's position" in a case where the regulation's language is clear "would be to permit the

---

[14]Plaintiff cites to United States v. Diaz, 245 F.3d 294 (3d Cir. 2001), for the Third Circuit's statement that "[g]enerally, if the amended guideline and commentary overrules a prior judicial construction of the guidelines" (such as Levy in the case at bar), "[the amendment] is substantive; if it confirms our prior reading of the guidelines and does not disturb prior precedent, it is clarifying." Diaz, 245 F.3d at 303. Diaz, however, was a criminal case (with accompanying due process and ex post facto concerns) addressing "post-sentencing amendment[s] to a guideline, or to its comments," id., and is distinguishable from the situation at bar. The court, therefore, will not use this standard in its analysis.

agency, under the guise of interpreting a regulation, to create de facto a new regulation." Id. at 588.

The Third Circuit acknowledged in Levy that its holding was based on statements in the SEC's adopting release which the court believed "**strongly suggest[ed] that the SEC intended**, in Rule 16b-3(d), to exempt 'grants, awards, and other acquisitions' with some compensatory nexus." Levy v. Sterling Holding Co., 314 F.3d 106, 124 (3d Cir. 2002) (emphasis added). The SEC filed an amicus brief in the case stating that the proposed narrow construction of the Rule, in fact, was not consistent with its intentions. The fact that the SEC and Third Circuit could be so at odds over the correct interpretation of the Rule indicates that the pre-amendment language of Rule 16b-3 was ambiguous.

The SEC protested the Levy court's interpretation of Rule 16b-3 at the time the decision was rendered, and later enacted an amendment to clarify its reasoning underlying the Rule. Deferring to the SEC's interpretation that Rule 16b-3 has never required a compensatory element would not be, in this case, "to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation," Christensen, 529 U.S. at 588, nor would it allow the SEC "'to change a legislative rule retroactively through the process of disingenuous interpretation of the rule to mean something other than its original meaning,'" Caruso v. Blockbuster-Sony Music Entertainment Centre at

19

Waterfront, 193 F.3d 730, 737 (3d Cir. 1999) (citation omitted).
The SEC's amendment "did not alter existing rights or
obligations; it merely clarified what those existing rights and
obligations had always been." Appalachian States Low-Level
Radioactive Waste Com'n v. O'Leary, 93 F.3d at 113.  Therefore,
the court finds that the 2005 amendment to Rule 16b-3 was an
interpretive clarification which is "available to any transaction
on or after August 15, 1996 that satisfies the regulatory
conditions so clarified."  70 Fed. Reg. 46,080, 46,080 (Aug. 9,
2005).

     A court may only grant a motion for judgment on the
pleadings if it is clearly established that no material issue of
fact remains to be resolved and that the movant is entitled to
judgment as a matter of law.  Jablonski v. Pan Am. World Airways,
Inc., 863 F.2d 289, 290 (3d Cir. 1988).  A number of material
issues of fact still remain in the case at bar, including those
identified by the court in its memorandum opinion denying
defendants' motion to dismiss.  (D.I. 34)  Consequently, the
court finds that defendants are not entitled to judgment as a
matter of law at this time and denies their motion for judgment
on the pleadings.

## V.  DISCUSSION

     For the reasons stated above, defendants' motion for
judgment on the pleadings is denied.  Plaintiff's motion for

20

leave to file is denied as moot.  An appropriate order shall
issue.

21