## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STUART TINNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 03-1126-SLR |
| | ) |
| GENESEO COMMUNICATIONS, INC., | ) |
| CAMBRIDGE TELCOM, INC., THE | ) |
| BLACKSTONE GROUP, CASS | ) |
| COMMUNICATIONS MANAGEMENT, | ) |
| INC., TECHNOLOGY GROUP, LLC, | ) |
| THE TCW FUNDS, MONTROSE | ) |
| MUTUAL PCS, INC., GRIDLEY | ) |
| ENTERPRISES, INC., TIMOTHY M. | ) |
| YAGER, and AIRGATE PCS, INC., | ) |
| | ) |
| Defendants. | ) |

Jeffrey S. Goddess, Esquire, Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Lee Squitieri, Esquire, and Maria J. Ciccia, Esquire, Squitieri & Fearon, LLP, New York, New York; Kenneth A. Wexler, Esquire, Wexler Toriseva & Wallace LLP, Chicago, Illinois.

Arthur G. Connolly, III, Esquire, and Kevin F. Brady, Esquire, Connolly, Bove, Lodge & Hutz, Wilmington, Delaware. Counsel for Defendants Geneseo, Cambridge, Cass, Technology Group, Montrose, Gridley, and Timothy Yager. Of Counsel: J. Gregory Deis, Esquire, and John M. Touhy, Esquire, Mayer Brown Rowe & Maw, Chicago, Illinois.

Rudolph J. Scaggs, Jr., Esquire, and Natalie J. Haskins, Esquire, Morris Nichols, Arsht & Tunnell, Wilmington, Delaware. Counsel for Defendant The Blackstone Group. Of Counsel: Daniel H. Tabak, Esquire, Simpson Thacher & Bartlett LLP, New York, New York.

Diane Zilka, Esquire, and John C. Kairis, Esquire, Grant & Eisenhofer, P.A., Wilmington, Delaware. Counsel for Defendant The TCW Funds. Of Counsel: Michael C. Keats, Esquire, O'Melveny & Myers LLP, New York, New York.

Kurt M. Heyman, Esquire, and Patricia L. Enerio, Esquire, Proctor Heyman LLP, Wilmington, Delaware.  Counsel for Nominal Defendant AirGate PCS, Inc.  Of Counsel: J. David Dantzler, Jr., Esquire, and J. Timothy Mast, Esquire, Troutman Sanders LLP, Atlanta, Georgia.

---

**MEMORANDUM OPINION**

Dated: August 8 , 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 11, 2003, plaintiff Stuart Tinney filed the action at bar on behalf of

nominal defendant AirGate PCS ("AirGate"), alleging violations of § 16(b) of the

Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78p(b), by a

number of defendants. (D.I. 1)  On April 27, 2004, plaintiff filed an amended complaint.

(D.I. 13)  Defendants then filed a motion to dismiss (D.I. 17), which this court granted in

part (as to two defendants), and denied in part (with respect to all other movants).[1]  (D.I.

34)  The defendants now remaining in the action at bar are Geneseo Communications,

Inc. ("Geneseo"), Cambridge Telcom, Inc. ("Cambridge"), The Blackstone Group

("Blackstone"), the TCW Funds,[2] Cass Communications Management, Inc. ("Cass"),

Technology Group, LLC ("Technology Group"), Montrose Mutual PCS, Inc.

("Montrose"), Gridley Enterprises, Inc. ("Gridley"), and Timothy M. Yager ("Yager")

(collectively, "defendants").

---

[1]All but one of the remaining defendants filed a motion for reargument or
reconsideration of the court's order "to the extent it denied the motion of the Moving
Defendants to dismiss the Amended Complaint." (D.I. 36 at 1-2)  The final defendant,
Trust Company of the West ("TCW"), filed a separate motion for reconsideration of the
court's decision. (D.I. 37)  The court denied both motions in an order dated March 27,
2006, stating that "the motions [did] not reflect a change in the controlling law,
availability of new evidence, or a clear error of law or fact." (D.I. 113)

[2]The TCW Funds are TCW/Crescent Mezzanine Partners II, LP; TCW Crescent
Mezzanine Trust II; TCW Leveraged Income Trust, LP; TCW Leveraged Income Trust
II, LP; TCW Leverage Income Trust IV, LP; TCW Shared Opportunity Fund II, LP;
Shared Opportunity Fund IIB, LLC; and TCW Shared Opportunity Fund III, LP. (D.I. 81)
The TCW Funds were named as defendants during the course these proceedings in
substitution for original defendant TCW.

On September 14, 2005, defendants filed a motion for judgment on the pleadings (D.I. 87), which the court denied in a memorandum opinion[3] and order dated October 10, 2006 (respectively, "the Opinion" and "the Order") (D.I. 114, 115). Discovery in the case at bar concluded on March 13, 2006. (D.I. 103) On October 24, 2006, Geneseo, the TCW Funds, Cambridge, Cass, Technology Group, Montrose, and Gridley ("the Geneseo defendants") filed a collective motion for "partial reconsideration or clarification" of the Order ("the Geneseo motion"). (D.I. 117) That same day, Blackstone and Yager ("the Blackstone defendants") filed their own joint motion for "reargument or reconsideration" of the Order ("the Blackstone motion"). (D.I. 120) On June 5, 2007, the court scheduled oral argument on the Geneseo and Blackstone motions for June 28, 2007. (D.I. 131) The Geneseo and Blackstone motions are now before the court, which has jurisdiction over the matters at bar pursuant to 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331 and 1337.

## II. BACKGROUND

### A. Factual History

Plaintiff was a shareholder in AirGate, a Delaware corporation. (D.I. 13 at ¶¶ 6-7) Plaintiff alleges that defendants were all principal shareholders of iPCS, Inc. ("iPCS"), a private company that planned to merge with AirGate. (D.I. 13, passim) AirGate and iPCS signed their formal merger agreement (the "Merger Agreement") on August 28, 2001. (Id. at ¶ 19) The Merger Agreement provided that iPCS would

---

[3]See Tinney v. Geneseo Commc'ns, Inc., 457 F. Supp. 2d 495 (D. Del. 2006).

2

become a wholly owned subsidiary of AirGate.[4]  (D.I. 19, ex. 1 at 43)  Also on August

28, 2001, AirGate and defendants entered into agreements requiring defendants to vote

all of their iPCS shares in support of the Merger Agreement.  (D.I. 19, ex. 1 at 55)

Defendants likewise entered into lock-up agreements prohibiting them from selling any

AirGate stock acquired through the merger without AirGate's prior consent for at least

120 days after the merger.  (Id.; D.I. 13 at ¶ 28)  The Merger Agreement gave

defendants the right to designate three directors to AirGate's nine member board upon

the merger's effective "time."[5]  (D.I. 13 at ¶ 31)  AirGate further agreed to appoint at

least one director designated by defendants to board committees.  (D.I. 13 at ¶ 31; D.I.

89, ex. A at § 7.14)

On November 27, 2001, the shareholders of AirGate approved the Merger

Agreement.  (D.I. 13 at ¶ 36)  Pursuant to the terms of the Merger Agreement, which

took effect three days later, defendants surrendered their iPCS stock certificates in

exchange for approximately 0.1594 shares of AirGate common stock per share of

iPCS.  (D.I. 13 at ¶ 38; D.I. 89, ex. A at §§ 1.2, 1.4)  The conversion rate was adjustable

if there was

> any inaccuracy in the number of outstanding shares of iPCS common
> stock, preferred stock, options, warrants or other stock equivalents
> presented by iPCS to AirGate;

---

[4]"The form of the merger was a tax-free stock for stock transaction."  (D.I. 13 at ¶ 25)

[5]The court notes that, while the amended complaint alleges that this designation of directors occurred on the effective **date** of the merger (D.I. 13 at ¶ 31), the Merger Agreement stated that this event would occur at the merger's effective **time** (D.I. 89, ex. A at § 7.14).  To the extent that this difference in terminology is relevant, the court will rely on the language set forth in the Merger Agreement.

the issuance after August 28, 2001 of options, warrants or other rights to
purchase iPCS common stock; or

any stock split, reverse stock split, stock dividend, recapitalization,
reclassification or other like change with respect to iPCS common stock
occurring before the merger.

(D.I. 19, ex. 1 at 43; see also D.I. 89, ex. A at § 1.4)

On December 11, 2001, less than six months after the merger, defendants sold

approximately 4 million shares of their AirGate stock. (D.I. 13 at ¶ 41) Plaintiff's

complaint requests a declaratory judgment that this sale constituted "short-swing

trading" barred by § 16(b) of the Exchange Act and seeks damages in the amount of

any short-swing profits realized by defendants, as well as reasonable costs and

expenses. (Id. at 17)

## B. Applicable Securities Law

### 1. Section 16(b) of the Exchange Act

Section 16(b) of the Exchange Act ("§ 16(b)") bans transactions known as

"short-swing trading":

For the purpose of preventing the unfair use of information which may
have been obtained by such beneficial owner,[6] director, or officer by
reason of his relationship to the issuer, any profit realized by him from any
purchase and sale, or any sale and purchase, of any equity security of
such issuer . . . involving any such equity security within any period of less
than six months, unless such security or security-based swap agreement
was acquired in good faith in connection with a debt previously contracted,
shall inure to and be recoverable by the issuer, irrespective of any
intention on the part of such beneficial owner, director, or officer in
entering into such transaction of holding the security or security-based

---

[6]For purposes of § 16(b), the term "beneficial owner" refers to "[a]ny person who
is the beneficial owner, directly or indirectly, of more than ten percent of any class of [an
issuer's] equity securities." 17 C.F.R. § 240.16a-2.

4

swap agreement purchased or of not repurchasing the security or
security-based swap agreement sold for a period exceeding six months.

15 U.S.C. § 78p(b). Section 16(b) does not apply to "any transaction where [a]

beneficial owner was not such both at the time of the purchase and sale, or the sale

and purchase, of the security or security-based swap agreement involved,"[7] or in

transactions "which the [Securities and Exchange] Commission [("SEC")] by rules and

regulations may exempt as not comprehended within the purpose" of § 16(b). Id.

## 2. Rule 16b-3

The Exchange Act grants the SEC the "power to make such rules and

regulations as may be necessary or appropriate to implement the provisions of [the

Exchange Act] for which [it is] responsible or for the execution of the functions vested in

[it]" by Congress. 15 U.S.C. § 78w. One such SEC rule, commonly known as "Rule

16b-3," governs transactions between an issuer and its officers or directors. In

pertinent part, the Rule states that "[a] transaction between the issuer . . . and an officer

or director of the issuer that involves issuer equity securities shall be exempt from [§]

16(b) . . . if the transaction satisfies" any of the following conditions:

(1) The transaction is approved by the board of directors of the issuer, or
a committee of the board of directors that is composed solely of two or
more Non-Employee Directors;

(2) The transaction is approved or ratified . . . by either: the affirmative
votes of the holders of a majority of the securities of the issuer present, or
represented, and entitled to vote at a meeting duly held in accordance
with the applicable laws of the state or other jurisdiction in which the
issuer is incorporated; or the written consent of the holders of a majority of

---

[7]In addition, "[t]he transaction that results in a person becoming a [10%]
beneficial owner is not subject to [§] 16 of the [Exchange] Act unless the person
otherwise is subject to [§] 16." 17 C.F.R. § 240.16a-2(c).

the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders; or

(3) The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition . . . .

17 C.F.R. §§ 240.16b-3(a), (d).  Note 3 to Rule 16b-3 states that

[t]he approval conditions of paragraphs (d)(1) [and] (d)(2) . . . of this section require the approval of each specific transaction, and are not satisfied by approval of a plan in its entirety except for the approval of a plan pursuant to which the terms and conditions of each transaction are fixed in advance, such as a formula plan. Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1) [or] (d)(2) . . . . such subsequent transaction shall not require further specific approval.

Id. § 240.16b-3 n.3.

## C. Defendants' Motion for Judgment on the Pleadings

On September 14, 2005, defendants moved for judgment on the pleadings (D.I.

87), contending that their transactions were exempt from § 16(b) liability pursuant to

Rule 16b-3(d).[8]  (D.I. 88 at 1)  Specifically, defendants argued that (1) "Rule 16b-3 . . .

provides that an issuer's board of directors or shareholders may exempt from [§] 16(b)

liability 'any' issuance of securities to an officer or director"; and (2) in the case at bar,

"the board of directors **and** the public shareholders of [AirGate] exempted the

---

[8]During the course of briefing this motion, plaintiff and defendants raised a dispute over the retroactivity of a 2005 amendment to Rule 16b-3 that had been enacted in response to the United States Court of Appeals for the Third Circuit's decision in Levy v. Sterling Holding Co., 314 F.3d 106 (3d Cir. 2002). The court ultimately found that the amendment constituted a retroactive clarification, allowing defendants to proceed with their Rule 16b-3 exemption argument (D.I. 114 at 20); however, because defendants are not seeking reconsideration of this part of the court's ruling, further discussion of the retroactivity issue is unnecessary.

6

defendants' acquisition of AirGate shares in accordance with Rule 16b-3 by approving the [M]erger [A]greement under which the defendants purchased their AirGate shares." (Id. (emphasis in original), citing Gryl v. Shire Pharms. Group PLC, 298 F.3d 136 (2d Cir. 2002))

In response, plaintiff argued that, although defendants had the burden of proving the applicability of the (d)(1) and (d)(2) exemptions to the case at bar, they had failed to do so. (D.I. 91 at 6, 22) According to plaintiff, "the 16b-3(d) exemptions apply only to officers and directors who were officers and directors at the time of the transaction to which the exemption is sought to be applied"; therefore, he asserted, since "defendants expressly deny that they were officers or directors of AirGate at the time of the acquisition," "they have effectively denied their eligibility to invoke the 16b-3(d) exemption." (Id. at 24-25) Meanwhile, because plaintiff's alternate grounds for alleging that defendants were statutory insiders[9] had survived defendants' prior motion to dismiss, plaintiff contended that such allegation had become the "law of the case[,] . . . preclud[ing] relitigation of that issue" in a motion for judgment on the pleadings. (Id. (citation omitted))

Additionally, plaintiff argued that his allegations that defendants were liable under § 16(b) as members of a group containing a deputized director prevented defendants from seeking exemption on that ground because Rule 16b-3(d) "**does not**, by its terms, extend to group members." (Id. at 25 (emphasis in original)) As a final

---

[9]To wit, that defendants were "part of a group which included beneficial owners aggregating 10% of Air[G]ate stock **prior** to their acquisition of the Air[G]ate stock which was sold less than six months later." (D.I. 91 at 24; see also D.I. 13 at ¶¶ 32, 33, 52)

matter, plaintiff maintained that, even if defendants were eligible for exemption under Rules 16b-3(d)(1) and (2), they had failed to meet the conditions required for those exemptions to apply. (Id. at 26) Specifically, plaintiff contended that: (1) defendants had denied being statutory insiders, thereby waiving any potential exemption; (2) the Merger Agreement "does not state that shareholder or director approval of the Merger Agreement shall constitute the directors' or shareholders' approval to exempt all defendants' transaction[s] from [§] 16(b)"; (3) [t]here is nothing in the record to indicate that the Board Resolution relied upon by defendants occurred, **as required by the statute and precedent**, in **advance** of the transaction"; (4) "the shareholder vote approving the [M]erger [A]greement [was] not shareholder approval of an exemption" under Rule 16b-3(d)(2); and (5) the board's general approval of the Merger Agreement was insufficient to qualify as approval of the specific transactions at issue.[10] (Id. at 28-30 (emphasis in original))

In its October 10, 2006 opinion, the court denied defendants' motion for judgment on the pleadings, finding that there were still questions of fact at issue in the case at bar. (D.I. 114) The court first noted that a successful claim to recover profits from a short-swing transaction requires proof of (1) the purchase (2) and sale of securities (3) by an insider (one of the issuer's officers or directors or a shareholder who possesses more than 10% of any one class of the issuer's securities) (4) within a six-

---

[10]A board's "approval of a plan in its entirety" can satisfy the requirements of Rule 16b-3(d)(1) if "the terms and conditions of each transaction are fixed in advance, such as [with] a formula plan," 17 C.F.R. § 240.16b-3 n.3; plaintiff, however, contends that "there was discretion as to the timing of the merger and conversion of iPCS [shares] into Air[G]ate stock [in the case at bar] because the Merger Agreement did not set a date for the merger." (D.I. 91 at 29)

month period of time. It then found that plaintiff had unquestionably satisfied the first, second, and fourth elements. (Id. at 7-8 (citations omitted)) The Opinion then analyzed "whether, at the time of the stock sale, defendants were insiders for the purposes of § 16(b) and, if so, whether the transaction is exempt from § 16(b) scrutiny under Rule 16b-3." (Id. at 8)

After a lengthy discussion about the retroactivity of an amendment to Rule 16b-3, the court found that defendants were not precluded from seeking exemption under the Rule. The court then addressed the sufficiency of plaintiff's claims under a Fed. R. Civ. P. 12(c) standard of review, which permits a court to grant judgment on the pleadings only if it is clearly established that no material issue of fact remains to be resolved and that the movants are entitled to judgment as a matter of law. The court held that "[a] number of material issues of fact still remain[ed] in the case at bar, including those identified by the court in its memorandum [order] denying defendants' motion to dismiss."¹¹ (D.I. 114 at 20) As a result, "the court [found] that defendants

---

¹¹This statement referred primarily to the court's previous determination (in its March 21, 2005 memorandum order denying defendants' motion to dismiss) that "[i]t [was] unclear . . . whether defendants were 'directors' as defined by the Exchange Act because the [M]erger [A]greement gave iPCS control over some business functions of AirGate prior to the effective date," and that "[i]t [was] also unclear how much control defendants had over the timing of the conversion relative to the timing of their sale of AirGate stock," since plaintiff has alleged that Blackstone, acting on behalf of the other defendants, had the "authority to time the registration and sale of AirGate common stock after the merger." (D.I. 34 at 7-8) Citing plaintiff's amended complaint, the court found that "[t]his registration and sale allowed defendants to sell their newly acquired AirGate stock despite the lock-up agreements . . . [;] [t]herefore, if defendant Blackstone had access to inside information, it could have timed the sale of defendants' AirGate common stock based on such information." (Id. at 8, citing D.I. 13 at ¶ 29) The court held that these issues, especially the question of how much control defendants had over the timing of the conversion and subsequent sale of their AirGate

9

were not entitled to judgment as a matter of law at [that] time." (Id.) Defendants then filed the instant motions for reconsideration or reargument.

## III. STANDARD OF REVIEW

Motions for reconsideration are the "functional equivalent" of motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). See Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1352 (3d Cir. 1990) (citing Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986)). The standard for obtaining relief under Rule 59(e) is difficult for a movant to meet, and motions for reconsideration or reargument "shall be sparingly granted," D. Del. LR 7.1.5 (effective June 30, 2007). The purpose of such motions is to "correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Accordingly, a court may alter or amend its judgment if the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice. See id. A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made, see Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993), and may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided," Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990). Reconsideration, however, may be appropriate where "the Court has patently misunderstood a party, or has made a

stock, were sufficient to indicate that material issues of fact still remained in the case at bar.

10

decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." <u>Brambles USA</u>, 735 F. Supp. at 1241 (citations omitted).

## IV. DISCUSSION[12]

The key to resolving the motions at bar is determining whether plaintiff has alleged properly that defendants were statutory insiders subject to the restrictions of § 16(b). Plaintiff's amended complaint avers that, at all relevant times, Geneseo, Cambridge, Blackstone, TCW (now the TCW Funds), Cass, Technology Group, Montrose, and Gridley (i.e., all of the defendants except Yager) were § 16(b) insiders: (1) "as a result of [their] beneficial ownership of stock"; and/or (2) "as . . . member[s] of a group constituting 10% or more of the common stock of Air[G]ate"; and/or (3) "[their] status as . . . member[s] of a group, one of whose members is a director by deputization."[13]  (D.I. 13 at ¶¶ 8-15)  In addition, plaintiff alleges that, at all relevant times, Yager was a § 16(b) insider:  (1) "as a result of his beneficial ownership of stock";

---

[12]In submitting their motions for reargument or reconsideration, defendants do not contend that there has been a change in the controlling law or that new evidence has come to light; instead, they argue that, in denying defendants' motion for judgment on the pleadings, the court erred both in its apprehension of the issues raised by the motion and in its application of the law to those issues. (See D.I. 118 at 1; D.I. 120 at 1)

[13]More specifically, plaintiff alleges that "[Blackstone] functioned on the board of iPCS and on the board of Air[G]ate through (i) Michael S. Chae . . . of [Blackstone], (ii) [Yager], and (iii) directors jointly selected by Blackstone and Air[G]ate," meaning that "Blackstone . . . [was] at all relevant times, [a] director[] of AirGate 'by deputization.'" (Id. at ¶¶ 34-35) "The Supreme Court has recognized that a corporation may be a virtual director, and thus an insider for purposes of § 16(b) liability, by deputizing a natural person to perform its duties on the board." Dreiling v. Am. Express Co., 458 F.3d 942, 952 (9th Cir. 2006) (citing Blau v. Lehman, 368 U.S. 403, 410 (1962)).

11

and/or (2) "as a member of a group constituting 10% or more of the common stock of Air[G]ate"; and/or (3) "his status as a director" of AirGate. (Id. at ¶ 16) Plaintiff contends that

> [t]he Merger Agreement and other attendant agreements . . . bound all defendants to act in concert for the purpose of consummation of the [m]erger and the purchase and sale of Air[G]ate common stock. . . . Accordingly, all defendants are part of a "group" for 16(b) purposes by virtue of SEC Rule 13d-5(b)([1]). . . . [and § 13(d) of the Exchange Act]. Moreover, . . . each defendant was . . . a beneficial owner of 10% of Air[G]ate stock under [§] 16(b).

(Id. at ¶¶ 32-33) Therefore, "[s]ince the holdings in subject securities of all group members may be aggregated," plaintiff claims that "all defendants were beneficial owners of 10% of AirGate stock." (Id. at ¶ 54) Finally, plaintiff avers that "defendants were[,] at all relevant times, deputized directors of Air[G]ate and/or ten percent beneficial owners of AirGate common stock and were subject to [§] 16(b) of the Exchange Act." (Id. at ¶ 55)

The court finds that the above-quoted language from the amended complaint can be parsed into two separate allegations, either one of which (if true) would theoretically qualify defendants as statutory insiders subject to § 16(b): (1) defendants are liable under the director prong of § 16(b) (whether directly, by deputization, or as members of a group containing a deputized director); or (2) defendants are subject to § 16(b) because they were 10% beneficial owners of AirGate. The court will now address separately the viability of each of these theories.

12

## A. Defendants' Potential Liability as Directors[14]

### 1. The Blackstone defendants

The exemptions from § 16(b) liability offered by Rule 16b-3 are only available to

those who are classified as insiders because of their status as directors or officers. See

17 C.F.R. § 240.16b-3(a).  Plaintiff contends that "the first criteria to be satisfied to

invoke [a Rule 16b-3] exemption[] is that one must [have been] a director on both the

date of purchase and the date of sale." (D.I. 125 at 5)  The Blackstone defendants,

plaintiff claims, "are not eligible for the [Rule] 16b-3 exemption because [they] have

denied being directors or officers of Air[G]ate when they acquired their Air[G]ate stock."

(Id. at 6 § B)  Plaintiff argues that, "[a]t the time [the Blackstone defendants] acquired

their Air[G]ate stock they were not directors.  Thus, [the Blackstone] defendants' lack of

director or officer status **on the date of purchase** prevents them from obtaining the

protection of exemption 16b-3(d) notwithstanding the fact that they have been identified

[as such] in a Board resolution." (Id. at 6 (emphasis in original), citing Donoghue v.

Casual Male Retail Group, Inc., 375 F. Supp. 2d 226 (S.D.N.Y. 2005), vacated in part

on other grounds, 427 F. Supp. 2d 350 (S.D.N.Y. 2006))

Plaintiff's argument ignores the fact that, in the context of a motion for judgment

---

[14]In the case at bar, both the motion to dismiss and the motion for judgment on the pleadings were filed jointly by all defendants, obscuring to some extent the fact that not all of the defendants were relying on the same defenses to plaintiff's allegations.  In their respective motions for reconsideration, however, defendants have now made clear to the court that the factual circumstances surrounding the AirGate merger required the Blackstone and Geneseo defendants to follow different paths in defending themselves against plaintiff's claims.  Consequently, in proceeding with its reconsideration of the motion for judgment on the pleadings, the court will bifurcate its analysis when necessary to account for the differences between the two groups of defendants.

13

on the pleadings, the allegations set forth in the complaint must be taken as true. See

Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). In the case at

bar, the amended complaint alleges, inter alia, that Blackstone was, "**at all relevant**

**times**, [a] director[] of AirGate 'by deputization,'" while Yager was, "**at all times**

**relevant** to the matched purchase and sale transactions described" in the amended

complaint, "an insider subject to [§] 16(b) . . . as a result of . . . his status as a director."

(D.I. 13 at ¶¶ 35, 16 (emphasis added)) If plaintiff's allegations are true, and the

Blackstone defendants were indeed directors "at all relevant times" (which, the court

finds, includes the time at which defendants purchased their shares), then they are

entitled to seek exemption under Rule 16b-3, regardless of whether they deny having

been directors at the time.[15]

---

[15]In fact, the veracity of plaintiff's allegation that the Blackstone defendants were directors **before** acquiring their shares of AirGate "is crucial . . . because, with the exception of one circumstance not relevant here, [§] 16(b) liability does not extend to individuals who were neither directors nor other insiders of the issuer when they acquired their issuer equity securities." Gryl v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 141 (2d Cir. 2002) (footnote omitted) (citing 15 U.S.C. § 78p(b)). Under Rule 16a-2(a),

> [a] transaction(s) carried out by a director or officer in the six months prior to the director or officer becoming subject to [§] 16 of the [Exchange] Act shall be subject to [§] 16 . . . only if the transaction(s) occurred within six months of the transaction giving rise to the Form 4 filing obligation and the director or officer became subject to [§] 16 . . . solely as a result of the issuer registering a class of equity securities pursuant to [§] 12 of the [Exchange] Act.

17 C.F.R. § 240.16a-2(a) (effective May 1, 1991). See also Ownership Reports and Trading By Officers, Directors and Principal Security Holders, SEC Exchange Act Release Nos. 34-28869, 35-25254, IC-17991, 56 Fed. Reg. 7242, 7244 (Feb. 21, 1991). Consequently, if the Blackstone defendants were **not** directors at the time they acquired their shares of AirGate, then they cannot face liability under the directorship prong of § 16(b), and plaintiff's amended complaint would fail on that ground.

14

And, indeed, the Blackstone defendants have claimed exemption under Rule

16b-3(d)(1) (also known as the "board approval exemption"), which shelters from §

16(b) liability a transaction between an issuer and one of its directors if that transaction

has been approved in advance by the issuer's board of directors. 17 C.F.R. § 240.16b-

3(d)(1). The Blackstone defendants point to a pre-merger resolution by AirGate's board

of directors that states, in pertinent part:

> [T]he Board has determined that it is in the best interests of [AirGate and
> its stockholders] to approve, for purposes of exempting each such
> transaction under Rule 16b-3 . . . as an exempt acquisition from [AirGate],
> the exchange of shares of [AirGate] Common Stock for shares of iPCS
> Common Stock in the Merger and the rollover of the options to purchase
> shares of iPCS Common Stock owned of record or beneficially by each of
> the individuals named on Schedule I hereto into options to purchase
> shares of [AirGate] Common Stock . . . .

*    *    *    *

> The Board hereby approves, for purposes of exempting each such
> transaction under Rule 16b-3 as an exempt acquisition from [AirGate], (I)
> the exchange of the number of shares of iPCS Common Stock set forth
> opposite the name of each individual on Schedule I hereto for the number
> of shares of Company Common Stock each such holder is entitled to
> receive in the Merger, less the number of any shares which may be sold
> or otherwise disposed of prior to the Merger, plus the number of any
> shares which may be acquired by exercise of any options listed on
> Schedule I hereto; and (ii) the conversion of the number of options to
> purchase shares of iPCS Common Stock set forth opposite the name of
> each individual on Schedule I hereto into a number of options to purchase
> shares of Company Common Stock, as determined in accordance with
> the terms of the Merger Agreement, less the number of any such options
> which may be exercise prior to the Merger.

(D.I. 89, ex. B at 4-6)[16] According to the list set forth in "Schedule I," the board intended

---

[16]"As a general matter, a district court ruling on a motion to dismiss may not
consider matters extraneous to the pleadings. However, an exception to the general
rule is that a 'document **integral to or explicitly relied** upon in the complaint' may be
considered . . . ." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.

15

to exempt Yager for a transaction involving up to 673,045 shares of iPCS common

stock and 1,000,000 iPCS options.  (Id. at 7)  With respect to Blackstone, the board

resolution stated that,

> [t]o the extent that [Blackstone] or any of its affiliates may be deemed a
> "director by deputization," the Board hereby approves, for purposes of
> exempting each such transaction under Rule 16b-3(d)(1) as an exempt
> acquisition from [AirGate], (I) the exchange of the number of shares of
> iPCS Common Stock held of record by Blackstone/iPCS L.L.C,
> Blackstone iPCS Capital Partners L.P. and Blackstone Communications

1997) (emphasis in original) (citations omitted).  In order to determine whether it may consider the AirGate board's resolution in connection with defendants' motion for judgment on the pleadings, the court must determine whether the resolution was "integral to or explicitly relied upon" by plaintiff's amended complaint.

The evidence of record indicates that, on March 1, 2002, plaintiff's counsel requested a copy of the board resolution; the pertinent portions of said resolution, which have also been submitted to the court, were faxed to plaintiff's counsel on March 22, 2002.  (D.I. 89, ex. B)  Plaintiff did not object to defendants' submission of the resolution in his brief opposing judgment on the pleadings, nor has he done so in his briefs opposing reconsideration.  (See D.I. 91, 125, 127)  Indeed, plaintiff cited to the resolution in support of his argument that the Geneseo defendants cannot satisfy the requirements of Rule 16b-3(d)(1) because the board did not specifically approve their transactions.  (See D.I. 91 at 30)

In Burlington, the Third Circuit stated that "[t]he rationale underlying [the] exception [allowing consideration of documents integral to the complaint] is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'"  Burlington, 114 F.3d at 1426 (fourth alteration in original) (omission in original) (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993)).  "[W]hat is critical [to this determination] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  Id. (citations omitted).  Plaintiff has had actual notice of the resolution's contents since March 2002, and has not objected to the possibility of its consideration by the court.  In addition, the court finds that the board resolution is integral to the amended complaint's allegations that defendants are liable under § 16(b), as well as its assertion that "[t]here are no exemptions applicable to the short swing transactions which are the subject of this lawsuit."  (D.I. 13 at ¶ 62)  As such, the court will consider the resolution in connection with the present analysis.  Furthermore, the court notes for the record that the Merger Agreement, which plaintiff has referenced throughout the amended complaint, may also properly be considered for purposes of the analysis at bar.

Partners I L.P. for the number of shares of [AirGate] Common Stock each
such holder is entitled to receive in the Merger, less the number of any
shares which may be sold or otherwise disposed of prior to the Merger,
and (ii) the conversion of the number of options to purchase shares of
iPCS Common Stock held by Blackstone Management Partners III into a
number of options to purchase shares of Company Common Stock, as
determined in accordance with the terms of the Merger Agreement, less
the number of any such options which may be exercise prior to the
Merger.[17]

(Id. at 9)

The resolution reflects a clear intent on the part of AirGate's board of directors to

exempt from § 16(b) liability the Blackstone defendants' acquisition of AirGate shares.[18]

Despite this, plaintiff contends that the Blackstone defendants, by their own admission,

are ineligible to claim exemption under the board acquisition rule. The court in Gryl v.

Shire Pharmaceuticals Group PLC, 298 F.3d 136 (2d Cir. 2002), "summarily reject[ed]

the plaintiffs' suggestion that the [b]oard [a]pproval [e]xemption [did] not apply . . .

---

[17]The resolution authorized exemptions for transactions involving the following
quantities: 12,099,850 shares of iPCS common stock for Blackstone Communications
Partners I L.P.; 10,407,867 shares of iPCS common stock for Blackstone iPCS Capital
Partners L.P.; 3,654,122 shares of iPCS common stock for Blackstone/iPCS L.L.C.;
and 30,000 iPCS options for Blackstone Management Partners III. (D.I. 89, ex. B at 10)

[18]The court initially denied defendants' motion for judgment on the pleadings
because, inter alia, plaintiff had alleged that the Merger Agreement gave defendants
some control over the timing of the merger; the court found that this allegation created a
material issue of fact, since Note 3 to Rule 16b-3 states that the board resolution
exemption "require[s] the approval of each specific transaction, and [is] not satisfied by
approval of a plan in its entirety except for the approval of a plan pursuant to which the
terms and conditions of each transaction are fixed in advance, such as a formula plan."
17 C.F.R. § 240.16b-3 n.3. Upon further briefing by the parties, the court now
understands that, with respect to the Blackstone defendants, the court's concern over
Note 3's "formula plan" requirement was unnecessary – whereas the Geneseo
defendants' claims of exemption were based on the AirGate board's approval of the
Merger Agreement in its entirety, the Blackstone defendants received from the board
specific approval for their transactions and, therefore, satisfied the requirements of Note
3.

because the [issuer's] board approved the option conversion plan in advance of the

individual defendants becoming . . . directors," holding that "[a]ll that is required under

Rule 16b-3(d)(1) is that the securities transaction, at the time it subsequently occurs, be

between the issuer and a director or officer of the issuer." Id. at 144 n.7 (citation

omitted). See also Donoghue v. Casual Male Retail Group, Inc., 375 F. Supp. 2d 226,

236 (S.D.N.Y. 2005) (quoting Gryl, 298 F.3d at 144 n.7), vacated in part on other

grounds, 427 F. Supp. 2d 350 (S.D.N.Y. 2006).  According to plaintiff, this

> clearly indicates that the Second Circuit believed that the approval could
> be valid even if obtained prior to the time the trader became a director,
> **but only where the exempted party was a director at the time of the**
> **transactions** and the exempted transaction involves a transaction
> between the issuer and an insider.  Here, [the Blackstone defendants]
> were not, according to their own testimony, directors of the issuer at the
> time of their acquisition of the stock in the merger because they were not
> directors until after the merger and after they became directors of the
> issuer they sold their Air[G]ate stock to the public which sale does not
> meet [the] definition of a transaction between a director and the issuer.

(D.I. 125 at 7 (emphasis added))  The court has already determined that the amended

complaint, when taken as true, alleges that the Blackstone defendants were directors at

the time they purchased their shares of AirGate. This satisfies Rule 16b-3(d)(1)'s

requirement (as stated by the court in Gryl) "that the [board-approved] securities

transaction, at the time it subsequently occurs, be between the issuer and a director or

officer of the issuer."  Upon reconsideration, the court finds that the Blackstone

defendants are exempt from any § 16(b) liability incurred by virtue of their status as

directors of AirGate.[19]

---

[19]The court notes that, even if the Blackstone defendants were also subject to §
16(b) as 10% beneficial owners, they could not be found liable for their transaction with
AirGate.  When enacting the new version of Rule 16b-3 in 1996, the SEC stated:

## 2. The Geneseo defendants

Plaintiff claims that, at all relevant times, Yager was a director of AirGate and Blackstone was a director by deputization. (D.I. 13 at ¶¶ 16, 34-35)  Plaintiff has also alleged that all of the defendants were members of a "group for [§] 16(b) purposes." (Id. at ¶¶ 32-33)  The amended complaint, therefore, avers that, due to "[their] status as . . . member[s] of a group, one of whose members is a director by deputization," the Geneseo defendants may be held liable under the director prong of § 16(b).[20] (Id. at ¶¶ 8-9, 11-15)  While such an allegation would normally be taken as true for purposes of a motion for judgment on the pleadings, the court declines to do so in this instance, as the theory of liability upon which this claim rests is a legal construct with no support in the law.

The "group" concept on which plaintiff relies is set forth in § 13(d) of the

---

Rule 16b-3 does not provide an exemption for persons who are subject to [§] 16 solely because they beneficially own greater than ten percent of a class of an issuer's equity securities.  Officers and directors owe certain fiduciary duties to a corporation.  Such duties, which act as an independent constraint on self-dealing, may not extend to ten percent holders. . . . However, new Rule 16b-3 is available to such a person who is also subject to [§] 16 by virtue of being an officer or director with respect to transactions with the issuer.

Ownership Reports and Trading by Officers, Directors, and Principal Security Holders, SEC Exchange Act Release No. 34-37260, 61 Fed. Reg. 30,376, 30,379 n.42 (June 14, 1996) (footnote omitted).  See also Roth ex rel. Beacon Power Corp. v. Perseus, LLC, No. 05 Civ. 10466(RPP), 2006 WL 2129331, at *10 (S.D.N.Y. July 31, 2006) (quoting Ownership Reports, 61 Fed. Reg. at 30,379 n.42); Segen v. CDR-Cookie Acquisitions, LLC, No. 05 Civ. 3509(RWS), 2006 WL 59550, at *7 (S.D.N.Y. Jan. 4, 2006) (same).

[20]Plaintiff has argued that, even if the court finds that the Blackstone defendants were exempt under Rule 16b-3, such an exemption would not apply to the Geneseo defendants because, he claims, Rule 16b-3(d) "**does not**, by its terms, extend to group members." (D.I. 91 at 25 (emphasis in original))

19

Exchange Act, which states that "[w]hen two or more persons act as a partnership . . .

or other group for the purpose of acquiring, holding, or disposing of securities of an

issuer, such syndicate or group shall be deemed a 'person' for the purposes of this

subsection."[21]  15 U.S.C. § 78m(d)(3).  Likewise, SEC Rule 13d-5 provides, in pertinent

part, that

> [w]hen two or more persons agree to act together for the purpose of
> acquiring, holding, voting or disposing of equity securities of an issuer, the
> group formed thereby shall be deemed to have acquired beneficial
> ownership, for purposes of [§§] 13(d) and (g) of the [Exchange] Act, as of
> the date of such agreement, of all equity securities of that issuer
> beneficially owned by any such persons.

17 C.F.R. § 240.13d-5(b)(1).  With respect to § 16(b), and "**[s]olely for purposes of**

**determining whether a person is a beneficial owner of more than ten percent of**

**any class of equity securities**," SEC Rule 16a-1 dictates that "the term 'beneficial

owner' shall mean any person who is deemed a beneficial owner pursuant to [§] 13(d)

of the [Exchange] Act and the rules thereunder."  Id. § 240.16a-1(a)(1) (emphasis

added).

    The above-quoted statutes and regulations clearly indicate that the issue of

group membership is relevant to § 16(b) "solely" for purposes of determining whether

two or more beneficial owners, acting in concert, control 10% or more of an issuer's

shares and, therefore, are subject to the restrictions set forth in § 16(b).  Plaintiff's

assertion that the concept of group liability also applies to the **directorship** prong of §

_____

[21]Section 13(d) of the Exchange Act regulates "[r]eports by persons acquiring
more than five per centum of certain classes of securities."  15 U.S.C. § 78m(d).

20

16(b) is untenable, and he has offered no legal support for such a theory.[22] As plaintiff has not alleged that the Geneseo defendants themselves were directors or directors by deputization,[23] the court finds, as a matter of law, that said defendants are not subject to directorship liability under § 16(b).[24]

### 3. Conclusion

The preliminary stages of this litigation have been marked by circular arguments from all of the parties. Plaintiff has asserted that defendants are statutory insiders in order to obtain the benefit of § 16(b)'s limitations on insider trading; in so doing, however, he has run the risk that defendants will qualify for exemption under Rule 16b-3. Defendants, meanwhile, have denied insider status in order to avoid liability under § 16(b), but have concomitantly claimed the benefit of Rule 16b-3 that arises from being characterized as directors.

As a practical matter, the AirGate board resolution clearly indicates that

---

[22]The one case to which plaintiff has cited, Lerner v. Millenco, L.P., 23 F. Supp. 2d 337, 344 (S.D.N.Y. 1998), is inapposite, as the court was discussing group membership in the context of beneficial owners, **not** directors.

[23]A review of the amended complaint reveals no support for plaintiff's contention that Blackstone "was a deputized director of all Air[G]ate [sic] on behalf of all defendants" (D.I. 91 at 4), a statement which implies that each individual Geneseo defendant deputized Blackstone to act on its behalf. Instead, the amended complaint alleges that, because Blackstone was itself a director by deputization (by virtue of its power to make appointments to AirGate's board), such status attached to the Geneseo defendants as a result of their joint membership with Blackstone in a group of beneficial owners. (D.I. 13 at ¶¶ 8-9, 11-15, 32-35)

[24]Such a finding renders moot the Geneseo defendants' claim that, under the Second Circuit's holding in Gryl v. Shire Pharmaceuticals Group PLC, 298 F.3d 136 (2d Cir. 2002), the Merger Agreement was sufficiently prescriptive to exempt them from liability pursuant to Rule 16b-3(d)(1) and Note 3.

21

Blackstone and Yager were meant to benefit from Rule 16b-3's exemption provision. The issuer's recognition of the Blackstone defendants' status in the transaction, coupled with plaintiff's assertion that they were directors "at all relevant times," means that the Blackstone defendants should be dismissed from the case at bar as directors exempted from § 16(b) liability under Rule 16b-3(d)(1). There exists no board resolution (or any other indication) demonstrating that the AirGate board meant to grant the remaining defendants an exemption. This lack of recognition of director status in the transaction further confirms that the Geneseo defendants should not be held liable under the novel theory promoted by plaintiff. Nevertheless, plaintiff has also alleged that the Geneseo defendants were 10% beneficial owners of AirGate before purchasing their shares, an issue the court has not yet addressed; the Geneseo defendants, therefore, could still be found liable on that ground.

## B. Defendants'[25] Potential Liability as 10% Beneficial Owners

Plaintiff's amended complaint alleges that, "[b]y virtue of the Merger Agreement and related agreements, all defendants . . . became beneficial owners of Air[G]ate stock for [§] 16(b) purposes before their purchase of Air[G]ate stock" because they gained a "pecuniary interest" in that stock prior to the effective date of the merger. (D.I. 13 at ¶¶ 51-53) The Geneseo defendants contend that they cannot be held liable under the beneficial ownership prong of § 16(b) because such a claim is barred by SEC Rule 16a-

---

[25]As stated above, the court has determined that the Blackstone defendants may not be held liable as beneficial owners. At this point, therefore, the court will address only the remaining Geneseo defendants.

22

2(c) and the United States Supreme Court's holding in Foremost-McKesson, Inc. v. Provident Securities Co., 423 U.S. 232 (1976). (D.I. 105 at 4)

At oral argument for the motions at bar, the parties expressed differing opinions as to whether plaintiff's claims under the beneficial ownership prong of liability had survived defendants' motion to dismiss. (See, e.g., D.I. 132 at 45:20-46:3, 53:15-21, 53:25-55:11) Defendants' motion for judgment on the pleadings focused exclusively on plaintiff's allegations of liability under the directorship prong of § 16(b); when plaintiff pointed out that his allegations regarding beneficial ownership were still viable (D.I. 91 at 24-25), defendants contended that "[t]he sole basis upon which this [c]ourt sustained [p]laintiff's [a]mended [c]omplaint [was] that [p]laintiff alleged that [d]efendants were insiders because they were AirGate directors" (D.I. 105 at 4). Defendants' protestations notwithstanding, however, nothing in the court's prior holdings in this case specifically foreclosed plaintiff from proceeding under the beneficial ownership theory of liability. (See D.I. 34, 114)

The Geneseo defendants' motion for reconsideration did not challenge the legal sufficiency of plaintiff's beneficial ownership claim and, therefore, that issue is not presently before the court. Discovery in the case at bar has been closed since March 13, 2006. (D.I. 103) In light of this fact, the court will allow plaintiff to proceed with his beneficial ownership claim.

## V. CONCLUSION

For the reasons stated above, the court will grant defendants' motions for reconsideration and reargument. (D.I. 117, 120) The court hereby vacates that portion of its October 10, 2006 memorandum opinion, at pages 20-21, and the order that

23

issued, denying defendants' motion for judgment on the pleadings based on their
director status. (D.I. 114 at 20-21; D.I. 115 at ¶ 1)  Defendants' motion for judgment on
the pleadings (which, the court notes, challenged only plaintiff's claims of directorship
liability) is granted (D.I. 87), and the only issue now remaining in the case at bar is
whether the Geneseo defendants may be held liable under § 16(b) in their capacity as
alleged beneficial owners of more than 10% of AirGate's shares.  An appropriate order
shall issue.